UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SIMONI,           Individually and on behalf   of all others similarly situated,   (collectively, "**Consumers**"),            Plaintiffs,     vs.    DOES 1 through 10, inclusive,   CHARLES E. SPICER, JR., and   MACMILLAN PUBLISHERS INC.,   (collectively, "**Macmillan**"),            Defendants.   _____ | : **ELECTRONICALLY FILED**  :  :  :  :  :  : Hon. _____  :  : Civ. Action No. _____  : **CLASS ACTION COMPLAINT**  :    FOR INJUNCTIVE RELIEF  :    AND COMPENSATORY AND PUNITIVE  :    DAMAGES AND STATUTORY ATTORNEYS' FEES  :  : **JURY TRIAL DEMANDED** |

**DESPITE REPEATED WARNINGS LAST YEAR
*AND A PRIOR STATE-WIDE CLASS ACTION LAWSUIT*,
MACMILLAN PUBLISHERS CONTINUES TO VIOLATE INDUSTRY
STANDARDS BY FRAUDULENTLY MARKETING AND SELLING "EBOOKS"
WHILE DELIBERATELY CONCEALING FROM PROSPECTIVE CUSTOMERS THAT ITS
EBOOKS LACK SUBSTANTIAL PORTIONS OF THE PRINTED BOOK OF THE SAME TITLE**

Plaintiff Stephen Simoni, individually and on behalf of the Class defined below (collectively, "**Consumers**"), brings this action for damages, restitution, attorneys' fees, and injunctive relief under New York State law against defendants Charles E. Spicer, Jr., Macmillan Publishers Inc., and Does 1 through 100, inclusive, (collectively, "**Macmillan**") demanding a trial by jury, and complains and alleges as follows:

## INTRODUCTION

1. Despite repeated warnings last year and a filed putative class action lawsuit, Macmillan Publishers Inc. continues to violate industry standards by fraudulently marketing and selling "ebooks" while deliberately concealing from prospective customers that its ebooks lack substantial portions of the printed book of the same title.

2. Defendant Macmillan Publishers Inc. ("**Company**") is a corporation incorporated in Delaware and headquartered in New York that markets and sells both printed and electronic versions of books it publishes.

3. Consumers bring this action to challenge the Company's misleading, unfair, fraudulent, and wrongful business practices in the solicitation and sale of the electronic counterpart of its printed books ("**ebooks**") whereby it continues to flout industry practice and instead sells ebooks that deliberately omit the photographs and substantial textual information that are included in the printed book of the same title.

4. Macmillan has apparently perpetrated its company wide policy against many thousands of consumers nationwide due to Macmillan's status as one of the leading sellers of electronic books throughout the country.

5. Defendant MACMILLAN PUBLISHERS INC. is a corporation incorporated in Delaware and headquartered in New York. Macmillan markets and sells both printed and electronic counterparts of titles it publishes.

6. Consumers bring this action to challenge the Company's deliberate company-wide policies of inducing sales by deliberately falsely portraying its ebooks as providing the same contents as their printed counterpart while affirmatively concealing that the ebooks lack substantial portions of the printed books' content of the same title.

7. All of the claims asserted herein arise out of Company's common practice and arise from a common fact pattern as to each member of the Class defined below.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. section 1332(d)(2) in that the matter in controversy of all class members' claims together aggregate more than $5,000,000, exclusive of costs and non-breach interest, the number of class members exceeds one hundred, and Consumer resides outside New York.

9. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. section 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claims referenced herein occurred in this District where Macmillan Publishers Inc.'s principal place of business is situated and where Charles E. Spicer, Jr. works.

# THE PARTIES

10. Plaintiff ("**Plaintiff**") is an adult male who resides outside New York and was fraudulently solicited by Macmillan over the Internet outside of New York to purchase an ebook.

11. Defendant Macmillan Publishers Inc. is incorporated in Delaware and headquartered in New York.  Defendant Charles E. Spicer, Jr. is the Executive Editor of the St. Martin's True Crime Library of Macmillan and, upon information and belief, works and resides in New York.

12. Except as described herein, Consumer is ignorant of the true names of Defendants sued as Does 1 through 10, inclusive, and the nature of their wrongful conduct, and therefore sues the Doe Defendants by such fictitious names.  Consumer will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

13. At all times herein mentioned, Macmillan Publishing Inc., Charles E. Spicer, Jr., and the Doe Defendants (collectively, "**Macmillan**") and the Doe Defendants, and each of them, were an agent or joint venturer of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency.  Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

14. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

15. At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

**FACTUAL ALLEGATIONS**

16. In the winter of 2020 to 2021, Consumer was solicited via the Internet to purchase an ebook version of one of Macmillan's published books, which also is for sale in printed form, for $11.99 as listed on Macmillan's website address us.macmillan.com. See Exhibit A. The book is one of the titles contained in the well known St. Martin's True Crime Library of Macmillan, which has published numerous titles for decades. Upon information and belief, each and every *printed* title in the St. Martin's True Crime Library, which detail truthful stories of criminal activity, contain multiple photographs of, *inter alia*, the real humans involved and the referenced physical locations (along with additional textual information) that are advertised to "take [the consumer] right to the scene of the crime" as Charles E. Spicer, Jr. and Macmillan Publishing Inc. explicitly affirm in constituent titles of the St. Martin's True Crime Library. The subject title, moreover, was advertised as consisting of two hundred and eighty-eight (288) pages.

17. Plaintiff purchased the ebook but discovered that Macmillan had deliberately omitted all of the photographs that appear in the printed version as well as substantial amounts of text. The ebook also consisted of only two hundred and eighty pages (280)— rather than the 288 pages that Macmillan advertised. Upon information and belief, the eight pages included all of the printed book's photographs along with additional textual information—all of which Macmillan deliberately omitted from the ebook while affirmatively concealing such omission from the consumer and knowingly and fraudulently stating that the ebook consisted of two hundred and eighty-eight pages.

18. Macmillan's actions are particularly egregious given that Macmillan Publishing Inc. and Charles E. Spicer, Jr. were both aware of multiple consumer notifications

concerning the deliberate omission of photographs (and substantial textual information) from two other titles that Macmillan advertises on its website that had in fact led to the filing of a state-wide putative class action in New Jersey Superior Court in 2020. In response to those earlier notifications, Macmillan Publishers Inc. and Charles E. Spicer contended that they lacked access to the printed counterpart of the ebook and would not acknowledge that the ebook had omitted photographs and text that appeared in the printed counterpart of the title.

19. Macmillan's and Mr. Spicer's claim that they lacked access to the constituents of a printed title for which Macmillan owns the copyright was patently false and designed to perpetuate the fraudulent scheme detailed herein. And, if each and every printed title in the St. Martin's True Crime Library do indeed contain photographs (and additional textual information) that "take [the consumer] right to the scene of the crime" as Charles E. Spicer, Jr. and Macmillan Publishing Inc. explicitly affirm in constituent titles of the St. Martin's True Crime Library, then Macmillan's feigned ignorance of whether photographs had been deliberately omitted from the subject ebook was nothing but a continued perpetration of the ongoing fraudulent scheme that continues to at the least the date of this filing (Exhibit A is a screen shot from Macmillan's website taken on the date of filing).

20. After prior notifications to Macmillan about two ebook titles that Macmillan had similarly fraudulently marketed and sold, Macmillan proceeded to purportedly provide disclosure to future prospective purchasers of those two ebooks that Macmillan had deliberately omitted "photographs" therefrom, but Macmillan still conceals that specified text had also been omitted from those two ebooks. And Macmillan still deliberately conceals its omission of photographs, text, and/or pages text from countless other ebooks, including as only one example the ebook referenced *supra* paragraph 16 (Exhibit A), and Macmillan continues to permit multiple other sellers to advertise its ebooks without any disclosure of the deliberate omission of photographs, text, and/or pages. See Exhibit B (screen shot of Amazon.com taken on the date of this filing with electronic highlighting added to referenced portions).

**CLASS ACTION ALLEGATIONS**

21.     Consumer brings all his Causes of Action on his own behalf and on behalf of the Class pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the Rule.  The Class is defined as follows:

> All individuals who, commencing six years before the filing of this action, were in the United States when making a purchase of an ebook from Macmillan which ebook lacked the complete text, photographs, and/or number of pages included in the printed book of the same title.  Excluded from the Class are: (1) employees of the Defendants, including their officers or directors; (2) Defendants' affiliates, subsidiaries, or co-conspirators; and (3) the Court to which this case is assigned.

22.     Plaintiff does not know the exact number of Class members because such information is in the exclusive control of the Defendants.  However, Plaintiff believes that due to the widespread marketing and sale of Macmillan ebooks throughout the United States and global reach of the Internet, Class members are sufficiently numerous, most likely many thousands of consumers, and geographically dispersed throughout the United States, such that joinder of all Class members is impracticable.  The information as to the identity of the Class members can be readily determined from records maintained by the Defendants, because all ebook sales are processed by Defendants and/or their agents and paper and electronic records of all sales are contained within the Defendants' and/or their agents' business records.

23.     Plaintiff's claims are typical of, and not antagonistic to, the claims of the other Class members because Plaintiff was injured by Defendants' practices and by asserting his claims, Plaintiff will also advance the claims of all members of the Class who were damaged by the same wrongful conduct of Defendants and their co-conspirators as alleged herein, and the relief sought is common to the Class.

24. The common legal and factual questions which do not vary from Class member to Class member, and which may be determined without reference to individual circumstances of any Class member, include, but are not limited to, the following:

    a. What statements were made by Company in the advertisements and marketing campaigns of its ebooks;

    b. Whether Company's advertisements and programs are likely to deceive;

    c. Whether Company succeeded in making sales to purchasers who would not have purchased the ebook if Macmillan and/or its agents had stated that the ebook lacked substantial portions of the text, photographs, and pages that are contained in the printed version;

    d. Whether Company was unjustly enriched by the challenged practices;"

    e. Whether Company's practices violate N.Y. Gen. Bus. Law § 350 (False Advertising);

    f. Whether Company's practices constitute a breach of contract;

    g. Whether plaintiff and the Class members have sustained damages, and the proper measure of such damages; and

    h. Whether plaintiff and the Class Members are entitled to the injunctive and equitable relief requested herein.

25. These common questions and others predominate over questions, if any, that affect only individual members of the Class.

26. The claims of the representative Plaintiff are typical of the claims of the Class. There are no material conflicts with any other member of the Class that would make class certification inappropriate. Plaintiff and counsel will fairly and adequately represent the interests of the Class.

27.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable.  Even if every Class member could afford individual litigation, the court system could not.  It would be unduly burdensome on the courts if individual litigation of numerous cases would proceed.  By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

28.     Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

29.     Injunctive relief is appropriate as to the Class as a whole because Defendants have acted or refused to act on grounds generally applicable to the Class.

30.     Whatever difficulties may exist in the management of the class action will be greatly outweighed by the benefits of the class action procedure, including, but not limited to, providing Class members with a method for the redress of claims that may otherwise not warrant individual litigation due to the relatively small amounts at issue that may not be worth the fees for an attorney's involvement on an isolated claim.  Accordingly, if a class were not certified, the alternative to a class action would not be multiple individual actions, but rather ***no actions*** and Company would thereby have succeeded in committing—and continuing to commit—its wrongdoing with legal impunity.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### (Violation of N.Y. Gen. Bus. Law § 349:  Deceptive Acts and Practices)

31. Consumer repeats and realleges each and every allegation set forth above as if fully set forth herein.

32. Defendants knowingly and deliberately fraudulently solicited sales of ebooks by concealing from the consumer that the ebook lacked substantial text, photographs, and/or pages that appear in the printed version of the same title.

33. Consumer relied on Defendant's solicitation and purchased the ebook, which lacked substantial text, photographs, and pages that appear in the printed version.

34. Plaintiff has been damaged thereby.

35. ***Company's wrongful behavior continues to the present.*** Macmillan fails to disclose in its advertising the deliberate omission of photographs, text, and/or pages from many of its ebooks (see, e.g., Exhibit A) and continues to permit sale of its ebooks by other sellers notwithstanding Macmillan's awareness that those sellers fail to disclose the deliberate omission of photographs, text, and/or pages that appear in the printed counterpart of the title.  Only one such instance is Mamcmillan's permitting Amazon.com to advertise a Macmillan ebook without disclosure as noted in the attached exhibit.  See Exhibit B.

36. Statute provides for payment of a minimum of $50.00 per violation and up to three times actual damages per violation.

37. Statute provides for award of attorneys' fees.

38. Consumer also seeks injunctive relief requiring Macmillan to cease its fraudulent solicitation practices.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Violation of N.Y. Gen. Bus. Law § 350:  False Advertising)

39. Consumer repeats and realleges each and every allegation set forth above as if fully set forth herein.

40. To the date of this filing, Macmillan affirmatively conceals from purchasers that it has deliberately omitted from ebooks photographs, text, and/or pages that are part of the printed book of the same title.

41. Due to Consumers' reliance on Macmillan's false advertising, they have suffered—and will continue to suffer—from Macmillan's affirmative concealment from prospective purchasers that it had deliberately omitted from ebooks photographs, text, and/or pages that are part of the printed book of the same title.

42. Statute provides for payment of minimum of five hundred dollars ($500.00) for each violation of the false advertising statute and up to three times actual damages.

43. Statute provides for award of attorneys' fees.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Fraud)

44. Consumer repeats and realleges each and every allegation set forth above as if fully set forth herein.

45. Macmillan engaged in fraud when it affirmatively concealed from purchasers that it had deliberately omitted from ebooks photographs, text, and/or pages that are part of the printed book of the same title.

46. Consumer relied on Macmillan's false representations and was damaged thereby.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Breach of Contract)

47. Consumer repeats and realleges each and every allegation set forth above as if fully set forth herein.

48. Macmillan knowingly and deliberately effected sales of ebooks while deliberately concealing that the ebooks lacked photographs, text, and/or pages that appear in the printed version of the same title.

49. Consumer relied on Defendant's solicitation and purchased the ebook, which lacked photographs, text, and pages that appear in the printed version of the same title.

50. Consumer has been damaged thereby.

51. Plaintiff also seeks injunctive relief requiring Macmillan to cease its breach of contract practices.

WHEREFORE, Consumer and the Class pray for relief as set forth below.

### **PRAYER FOR RELIEF**

1. Certification of the proposed Class and notice and claims administration to be paid by Defendants;

2. Statutory damages and penalties;

3. Compensatory, general, incidental, and consequential damages according to proof;

4. Special damages according to proof;

5. Punitive damages to punish Defendants for their willful illegal and deliberate tortious conduct and to deter others who may otherwise engage in similar willful illegal and deliberate conduct;

6. Restitution and disgorgement according to proof;

7. Injunctive relief against Defendants, and each of them to prevent continuing future wrongful conduct as detailed herein;

8. Prejudgment interest at the maximum legal rate;

9. Costs of the proceedings herein;

10. Reasonable attorneys' fees; and

11. All such other and further relief as the Court deems just.

Florham Park, New Jersey
January 1, 2021

                       SIMONI LAW OFFICES


                       By:   __/s/__Stephen J. Simoni [ECF Filer]
                              Stephen J. Simoni (SS7645)

                       c/o Jardim, Meisner & Susser, PC
                       30B Vreeland Road, Suite 100
                       Florham Park, NJ 07932
                       (917) 621-5795
                       StephenSimoniLAW@gmail.com

                       *Counsel for Consumers*

# EXHIBIT A

 Search  Advanced search  BOOKS

# THE PALM BEACH MURDER
## The True Story of a Millionaire, Marriage and Murder

Marion Collins
St. Martin's Paperbacks



READ AN EXCERPT →

**BUY THE BOOK**  g★★★★

e-Book

St. Martin's Paperbacks
St. Martin's Publishing Group
On Sale: 07/11/2004
ISBN: 9781466819986
288 Pages

$11.99

B&N NOOK    Google Play    Kindle

Kobo    eBooks.com    iBooks

For thirty-three-year-old millionaire James Sullivan, sweeping Lita McClinton off her feet was easy. But when the reckless social climber and adulterer turned marriage in their Palm Beach mansion into a luxurious hell, the beautiful Georgia debutante wanted out--and half of her husband's fortune to take with her.

Then in 1987, a hit man unloaded three bullets into Lita's head

# EXHIBIT B

